The opinion of the court was delivered by •
Watkins, J.
The object of this suit is the annulment and revocation of a tax sale of certain described improved real estate, situated in New Orleans, of which the plaintiffs claim to have derived title by inheritance from Joseph and Margaret Billgery, their deceased ifather and mother, and their averment is, that they acquired same .at.sheriff’s sale at the suit of the city of New Orleans against one JLacroix on the 30th of September, 1874, as evidenced by a sheriff’s jproees verbal, duly recorded in the conveyance office.
Petitioners aver .that the defendant sets up a claim of ownership to said property, through and by virtue of a tax sale made to Doaningo Negrotto, who conveyed same to the Western Land and Em *891 igration Company, from whom defendant claims to have derived title.
That Negrotto became adjudicatee thereof at a judicial sale made by the tax collector in the year 1888, under and by virtue of the authority of Act 82 of 1884; but that same was absolutely null and void, because the tax collector was without authority to execute a deed to him until he had complied with the essential condition precedent of that statute, to-wit: “the payment of all taxes due both city and State upon said property subsequent to the year 1880,” which he and his vendees had failed to do, thus producing a cloud upon their title.
They then aver that since the aforesaid adjudication to Negrotto, they have obtained a certificate of redemption from the auditor, having paid all of the taxes which had been assessed against said property since 1880, prior to the aforesaid adjudication; and that, in consequence of said payment of taxes, and redemption thereof from the auditor, their ancient title by inheritance had revived and become established.
The prayer of their petition is, that there be “ judgment restraining defendant from further slandering petitioner’s title by setting up any claims of ownership; decreeing their alleged title null and void; and erasing and canceling the same from the records of the conveyance office.”
For answer the defendant pleads a general denial and specially denies that plaintiffs are the owners and possessors of the property; and assuming the character of plaintiffs in reconvention, it alleges full and complete ownership thereof, “having acquired same from the Western Land and Emigration Company, which company purchased from Domingo Negrotto, who acquired the same at tax sale made by the State tax collector, under provisions of Act 82 of 1884.
“ That all the taxes subsequent to the year 1880, both city and State, due and owing on the said property and assumed by the purchaser, were paid. That the certificates of redemption referred to in the plaintiffs’ petition were issued after .the payment of said taxes, assumed and due by the purchaser at said sale, and in violation of a judgment and decree of the United States Circuit Court, rendered in the case of Western Land and Emigration Company vs. George Guinault, C. Harrison Parker and Isaac L. Patton, State Tax Collec *892 tors, No. U. S. Circuit Oourt, which decree is binding upon the State; and appearer pleads the same as res judicata.”
The defendant further pleads the prescription of three and five years in bar of plaintiffs’ demand.
The prayer is for judgment rejecting the plaintiffs’ demand, and for judgment upon its reconventional demand decreeing it to be the true and lawful owner of the property, and maintained and quieted in the possession thereof.
The parties agreed upon a statement of facts 'upon which the case was submitted; and upon the trial thereof there was judgment pronounced in favor of the defendant, and the plaintiffs have appealed.
From the statement of facts we find that the admissions conform to the allegations of the petition and answer, and the transcript otherwise discloses that the heirs of Billgery paid into the State treasury the amount of the taxes of 1880, 1881, 1882 and 1883 which had been assessed against the property in dispute, and obtained the auditor’s certificates of redemption therefor, bearing date May 18, 1884.
That on the 23d of August, 1886, said property was, by the tax collector, adjudicated to Domingo Negrotto, under and in pursuance of the terms and provisions of Act 82 of 1884, in,the forced collection of the taxes assessed against the same for the years 1875, 1876, 1877 and 1888, and remaining unpaid; and upon 15th of December, 1888, the tax collector executed an act of sale therefor in favor of the Western Land and Emigration Company as the assignee of Ne-grotto, which was registered in the book of conveyances immediately afterward.
That the act of sale, amongst other things, declares that, as part of the purchase price, ‘ ‘ the said purchaser hereby assumes and promises to pay all the State, city, parish and municipal taxes on said property for the year 1880 and subsequent years, together with all interest, penalties, costs, charges, fees and commissions which may be due and not paid.”
That the certificate of the tax collector bearing date January 10 1894, shows that the taxes which were assessed against this property in years prior to 1879 were paid and satisfied by the act of sale above described; and those for the years 1880, 18.81, 1882 and 1884, aggregating five dollars, were satisfied by the heirs of Billgery, and form the basis of the auditor’s certificate of redemption; all other *893 taxes having been paid by the defendant and its predecessors in title.
That this property was adjudicated to the State by the tax collector on the 29th of November, 1895, in satisfaction of delinquent taxes of 1898, and the title was duly recorded soon afterward.
It appears from the transcript of the cause, which is in evidence, that on the 81st of December, 1888 — immediately after its acquisition of the property — the purchaser instituted a suit in the Circuit Court of the United States, entitled The Western Land and Emigration Company vs. George Guinault et als., bearing docket No. 11,764, the object and purport of which, in so far as it has a bearing upon the issues in this suit, may be summarized as follows, viz.:
That the taxes, tax mortgages, and the tax privileges in favor of the State of Louisiana and the city of New Orleans for the years 1880, 1881, 1882 and 1888, were extinguished by the prescription of three and five years; and “ that the time for the acquisition of said prescription had elapsed and run out before it became the owner of said properties,” including the property in suit.
That the complainant had paid all the State and city taxes due upon said properties which had been assessed against it for the years 1884, 1885, 1886,1887 and 1888, in the name of the estate of Billgery, being the five years previous to the adjudication to Negrotto under Act 82 of 1884.
That complainant had demanded of the Recorder of Mortgages the cancellation and erasure of the inscription of said tax liens and mortgages for the years specified without avail; and, on that account, he averred that same had the effect of casting a cloud upon his title which should be removed therefrom.
That the city officers who are charged by law with the collection of city taxes, and the State tax collector for the district in which said property is situated, pretend and assert that said taxes are still due and owing, and threaten to advertise for sale, and sell said property for the payment thereof, if same are not immediately paid, notwithstanding same have been extinguished by prescription.
That complainant prayed for and obtaiaed an injunction against each one and all of said officers, restraining and prohibiting any such advertisement or sale as contemplated, and for an appropriate decree perpetuating same, and commanding the recorder to cancel *894 said interfering inscriptions for the grounds and reasons therein stated.
That on final hearing of complainant’s bill the injunction was perpetuated, and the tax collectors enjoined from any further proceeding looking to the collection of said taxes of 1880, 1881, 1882 and 1883, on the ground and for the reason that same were prescribed; and it also was decreed that the Recorder of Mortgages should cancel and erase from the books of his office the aforesaid tax inscriptions against said property.
On this state of facts we have distinctly raised the question of law, whether or not the defendant’s title is shielded and protected by that judgment and decree, from the demands and pretensions of the plaintiffs under their auditor’s certificate of redemption, procured five years thereafter and founded upon a payment of the identical taxes which it decreed to have been prescribed at the time of Negrotto’s acquisition under Act 82 of 1884.
The Oircuit Oourt in said cause decided “ that the meaning of Sec. 5 of Act 82 of 1884 is, that the property sold at tax sale should pass to the purchaser subject to such liens for unpaid taxes as could have been enforced against the same in the hands of the former owner in case there had been no sale; and that it was not the intention of the legislation in said act to revive against property sold for taxes any lien that had already ceased to exist thereon.”
That decree was rendered in March 1889 — more than one year prior to the decision of the case of State ex rel. Martinez vs. Tax Collector, 42 An. 677, which was decided in May 1890. Western Land and Emigration Company vs. Guinault, Recorder, 38 Federal Reporter, 287.
Consequently, anything that was said in the Martinez case could not be given any retrospective effect, and control the decision of the Oircuit Oourt in Che case of the land and immigration company.
The law of this State applicable to tax inscriptions, as interpreted by this court immediately previous to the. decision of the Circuit Court, was, that they were prescriptible by the lapse of three years, under the statute of 1877. Succession of Stewart, 41 An. 127.
That decision involved taxes and tax inscriptions of 1880, 1881, 1882 and 1883, just as the decision of the Circuit Court did — and it was rendered in the month of February, 1889, just one month prior *895 to the Circuit Court decree, and it was, therefore, a precedent for that court, in rendering its decree.
This case differs essentially from that of Remick vs. Lang, 47 An. 914, in that in the adjudication therein, the purchaser assumed and promised to pay the taxes for the years 1880, 1881, 1882, 1883 and 1884, as part of the purchase price; and he subsequently defaulted in paying the taxes subsequently assessed for the years 1885, 1886, 1887, 1888, 1889, 1890, 1891 and 1893; the plaintiff, as original owner, making payment of them all in 1893 and procuring a certificate of redemption from the auditor reinstating his primordial title.
On the contrary, the Western Land and Emigration Company filed; the aforesaid suit for the cancellation and erasure of the taxes of 1880,. 1881, 1882 and 1883, and procured a decree of the Circuit Court adjudging said taxes to have been prescribed at the time the tax sale-was made; and said company, at onee, paid all the remaining taxes for-the years 1884,1885,' 1886,1887 and 1888 — the adjudication under Act 82 of 1884 taking place in December of 1888 — and it caused the-property to be thereafter assessed in its name and paid annually the-taxes thereon assessed.
The property was in this situation in 1894, when the plaintiffs, assuming the Circuit Court decree to have been absolutely void, paid to the State treasurer, voluntarily, the taxes it had adjudged to be-prescribed, and upon presentation of his receipt to the auditor, he issued a certificate of redemption to them — said taxes being one dollar for 1880, one dollar for 1882, and one dollar and one-half for the years 1883 and 1884, that is to say, five dollars in all.
And this was done in the face of the fact that the Circuit Court had jurisdiction of that suit ratione persones, by reason, the complainant being domiciled in and a citizen of another State-than Louisiana;, and of the fact that the complainant had subsequently sold and conveyed, by a duly recorded title, the property in controversy to a citizen of another State — being herein represented by a curator ad hoe — who had made its purchase upon the faith of the decree of the Circuit Court and prior decisions of this court interpreting the tax statutes of this State applicable thereto.
Section 34 of Act 98 of 1886 provides that “ all taxes, tax mortgages and tax privileges shall be prescribed by three years -from the date of filing the tax rolls,” etc.
That statute applies to the taxes under consideration here, the *896 payment of which Negrotto assumed as a part of the price he was to pay, and from the effect of which his vendee was relieved by the decree of the Circuit Court; and the decree of that court finds an exact parallel in the case of State ex rel. Powers vs. Recorder, 45 An. 566, in which this court said in passing upon a similar question:
‘‘Consequently, we find that the inscriptions of liens or mortgages securing city taxes against the property for and during the years 1877 to 1886, inclusive, should be canceled and erased from the mortgage records of the parish ” — nothwithstanding the relator had assumed the payment of all the taxes assessed against the property as part of the price of his acquisition from the State, through the auditor’s deed of sale.
But it is argued on the part of plaintiffs that the Circuit Court had no jurisdiction as to the State, as she could not be sued without her consent previously obtained; and that the tax collector did not have the capacity to represent her in the premises.
In so far as the capacity of the tax collector is concerned there can be no serious question, because he was attempting to collect those taxes by seizure and sale of the property in dispute when he was met by the complainant’s injunction issued out of the Circuit Court.
Possessing a duly recorded title thereto, the company was certainly entitled to thus restrain his further proceeding, charging, as it believed, and as that court subsequently decided, that the taxes of the years which have been particularly mentioned were in fact prescribed.
But it is insisted that the complainant’s title was, to a certain extent, involved, and quoad hoc the State could not be represented by the tax collector. This is not correct. The complainant’s title was not involved, except incidentally; and in Smith vs. City, 43 An. 727, this court entertained and decided a question of title, contradictorily with the tax collector alone.
It is further insisted that the judgment of the Circuit Court was not binding on the plaintiffs, because they were not cited.
They were not necessary parties because the action did not involve their title; and,further, because, at the time of the institution of the suit in 1888, their title had been completely divested by the adjudication to Negrotto first, and to the complainant afterward; and the *897 title evidenced by the auditor’s certificate of redemption was not acquired until 1896 — just eight years afterward.
On the whole, it is evident that the Circuit Court had jurisdiction in personam and that necessarily attracted to it jurisdiction ratione materise of the question under consideration, the property being only incidentally affected, and the defendants being within its jurisdiction territorially.
The complainants in the Circuit Court and the “Heirs of Billgery in this court represent the same cause of action — the taxes of 1880, 1881, 1882, 1883, which were assessed against the property in dispute, the contention of the former having been that same were prescribed at the date of the adjudication under Act 82 of 1884, and, consequently, formed no part of the purchase price which Negrotto agreed to pay; and the contention of the plaintiffs is that those taxes were not prescribed and were never paid by Negrotto, but have been paid by them and serve as the foundation of their present title by redemption.
Is not the thing demanded in each case, identically the same? The claim set up in the former suit by the tax collector is the same that plaintiffs set up in this; the demand of the complainant in the former suit is the same that the defendant is asserting in this.
The demand asserted in each suit is “founded upon the same cause of action.”
The demand is “between the same parties and formed by them against each other in the same quality.” R. O. C. 2286.
And that article of the Oode declares that, when these conditions coexist, * “the authority of the thing adjudged takes place with'respect to what was the object of the judgment.”
And the following article declares that in such case a “ legal presumption dispenses with all other proof in favor of him for whom it exists.” R. O. O. 2287.
That the demand is formed between the same parties is fully evidenced by the fact that the property in controversy was adjudicated to the State in November, 1898, for the alleged delinquent taxes of 1883— which are among those which the Circuit Court decreed to have been prescribed — and in January, 1896, plaintiffs volunteered to pay same to the State Treasurer, and thereafter procured the auditor’s certificate of redemption therefor — less than two months having intervened.
This suit is intended and expected to accomplish through- the in *898 strumentality of that redemption the revocation of the defendant’s title, on the sole ground that the decree of the Circuit Court is not binding and effectual with respect to them or their title of redemption; for upon the maintenance of that contention alone, confessedly depends the applicability of the principles announced in Remick vs. Lang.
It is quite evident from the foregoing statement that as the State never had any title to the property in suit until November, 1895, —near ten years after same had been adjudicated to Negrotto— and only held title for little more than one month when the plaintiffs obtained a certificate of redemption, that the title of the.State is but an inconsequential factor in this controversy; therefore,-we have neither quoted from nor analyzed the following authorities which are referred to in plaintiffs’ brief. Carr vs. United States, 98 U. S. 433; United States vs. Lee, 106 U. S. 222; The Siren, 7 Wallace, 152; The Davis, 10 Wallace, 15.
As in this case it appears that there was no decision of this court defining what legal effect and interpretation was to be given to such an assumption as that which the provisions of Act 82 of 1884 required of a purchaser thereunder, at the date of the decree of the Circuit Court, it is quite clear that that court rightly decided it with the lights it had on the subject. It was bound necessarily to act upon its own judgment and adopt its own interpretation of the law applicable to the case; notwithstanding this court might subsequently take a different view of the question.
But the judgment of the Circuit Court is binding upon the parties before it in that suit and their vendees and assigns; and it ihust be respected and upheld as the law of that case, and of the- subject matter of that litigation.
In Burgess vs. Seligman, 107 U. S. 20, the Supreme Court of the United States laid down briefly the rules defining the extent to which the Federal courts are bound by the State decisions, as follows:
“ The Federal courts have an independent jurisdiction in the administration of State laws, co-ordinate with, and not subordinate to, that of the State courts, and are bound to exercise their own judgment as to the meaning and effect of those laws. The existence of two co-ordinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient but for the exercise of mutual respect and deference. Since the ordinary *899 administration of the law is carried on by the State courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the State, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate and the construction of State constitutions and statutes. Such established rules are always regarded by the Federal courts, no less than by the State courts themselves, as authoritative decisions of what the law is. But where the law has not been thus settled it is the right and duty of the Federal courts to exercise their own judgment, as they also always do in reference to the doctrines of commercial law and general jurisprudence. So when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision of the State tribunals, the Federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the State courts after such rights have accrued. But even in such cases, for the sake of harmony and to avoid confusion, the Federal courts will lean toward an agreement of views with the State courts if the question seems to them balanced with doubt. Acting on these principles, founded as they are on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunal, endeavor to avoid, and in most cases do avoid, any unseemly conflict with the well considered decisions of the State courts. As, however, the very object of giving to the national courts jurisdiction to administer the laws of the States in controversies between citizens of different States was to institute independent tribunals, which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in oases not foreclosed by previous adjudication.” The American Law Register and Review, 186.
. Accepting that statement as the settled jurisprudence of the Supreme Oourt on the question, as did the judge of the lower court, we concur in his finding.
Judgment affirmed.