On the Merits.
August Seim,
plaintiff, to whom the auditor executed a deed in June, 1902, to land which he now claims, asks that his right be recognized and affirmed.
He traces his title to the state of Louisiana. He avers, substantially, that his author (the state) acquired one tax title on the 7th of July, 1884, another tax title on the 1st of November, 1883, and that he is now the owner of all the rights of the state. Plaintiff pleads his own title as valid, and attacks defendant’s as invalid.
The defendant joined issue with plaintiff, and pleaded the prescription of 10 and 30 years.
She pleaded estoppel on the ground that plaintiff had some time previous to his purchase from the state interested himself in finding a buyer of the property, and that through him a buyer was found.
She also pleaded res judicata, basing her plea on a judgment which she obtained ?n the year 1806, before one of the city courts of the city of New Orleans, against the officers of the state and city charged with the collection of taxes.
The auditor’s deed which plaintiff holds is in the usual form.
Plaintiff, for some reason not fully explained by the testimony, only a few months before he acquired his title from the state, interested himself in finding a purchaser for the defendant. He induced defendant’s agent to go with him to the home of a Mr. Dodt, and there, we are informed by the testimony, the terms of the sale to be passed were agreed upon between the parties. The *557 buyer paid $200 to the seller as earnest money, in presence of plaintiff, who had conducted negotiations between this buyfer and defendant’s husband and agent.
It occurs to us that plaintiff had taken such an active part in the matter of this sale that he was scarcely in a position himself to become the owner in the manner he did.
The buyer, upon an examination of the title, decided not to buy the property. Plaintiff, as to his conduct in the premises, was criticised by witnesses, and comments were made by the lower court regarding the part taken by him. He did not seek to explain anything by himself testifying so as to explain his connection with the matter.
But we pass from this ground to that of res judicata, which was sustained by the lower court. This plea is based upon the fact that in the year 1896 she obtained judgment, as before mentioned, against the defendant in the suit, the city of New Orleans, to cancel and erase the inscriptions of the raxes on the property now in controversy, and further against the tax collector for the Third District and recorder of mortgages, ordering him to cancel and erase from their books all inscriptions for taxes against the property up to and including the year 1892.
The taxes were canceled' and erased. Plaintiff, in answer to the plea of res judicata pleaded by defendant, urged that this plea is not good, because the judgment pleaded is void for want of jurisdiction of the court by which it was rendered.
If the judgment had been obtained under the Constitution of 1898 instead of 1879, it may be that the attack on the judgment of want of jurisdiction ratione mátense would have held good. But the Constitution of 1879, regarding the jurisdiction of the city court, differs materially from the corresponding article of the Constitution of 1898.
The Constitution of 1879 conferred jurisdiction on these courts over all sums not exceeding $100. The Constitution of 1898 seems more restricted, as relates to jurisdiction when title of immovable property is involved. It restricts the jurisdiction to movable property not exceeding that amount in value, while the Constitution of 1879 imposed no limitation to jurisdiction in that respect, except as to the amount involved.
The court had jurisdiction, for the property was assessed at $100 and the taxes assessed were within that amount.
We therefore conclude that in 1896 the court had jurisdiction to order the cancellation of taxes, as was ordered in this case.
Suggestion is made that, a sale having been executed to the state prior to the judgment ordering the cancellation of the taxes, the tax collector and other defendants in the suit which resulted in a judgment to cancel, as before mentioned, were without capacity to stand in judgment for the state, and that it follows the judgment was null and void, and not pleadable as res judicata.
We turn to a comparatively recent decision, and find this court has decided that the court has jurisdiction to hear and determine the validity of the title of the state to the property, even in the absence of consent on the part of the state.
The issues were directly presented, and were passed upon, after evidently having received most careful consideration by the vcourt. The state, the court held, may not be concluded from asserting any right she may have in a direct action, but in the meantime the right is recognized in the owner for valid cause to have the tax canceled.
The decision goes on to state that immunity of the sovereign from suit is no longer the condition, even in England, from where the' principle emanates; that the property rights of the owner are not free from the possibility of all judicial inquiry. From this and other propositions the court deduces that owners who are only seeking to remove a cloud on their title placed thereon by officers of the state are entitled to be heard. Budd v. Tax Collector, 36 Da. Ann. 961.
This has become a rule of property, and should not be changed save for most cogent reasons.
It has become general to have the cancellation made by suit in the court.
No one has ever thought of going to the General Assembly to remove the cloud on titles, and obtain authority to sue the state through its proper officers.
A similar judgment obtained against the tax collecting officers was held binding as “the law of the cases and of the subject-matter of the litigation.” Billgery v. Land Trust, 48 La. Ann. 898, 19 South. 920; Hoyle v. Athletic Club, 48 La. Ann. 900, 19 South. *559 924; Russell v. Lang, 50 La. Ann. 36, 23 South. 113.
The right to sue the sovereign under conditions similar to those here was expressly recognized in Osburn v. U. S. Bank, 9 Wheat. 825, 6 L. Ed. 204, in which the court held, as indicated by the headnote, the prohibition to sue a state does not extend to cases in which a state is not made a party to the record.
In the case before, us for decision the state is not made a party to the record. It has no interest. It claims no property. The purchaser from her alone prosecutes to invoke a right to the property. He is not the state, and is invested with no right which gives him immunity from all suits for the property on the ground that he holds a deed from the state.
The tax collecting officers and others made defendants, who would neglect to set up proper defense in case of suit, would render themselves liable, at least, to impeachment and dismissal from office. They are the custodians of the tax record in the parishes and cities, and they have it in their power to produce all needful evidence to prevent imposition. The laws have provided ample protection in eases of this kind. .On the other hand, it is but just to let each taxpayer have his day in court to proceed for the cancellation of taxes resting as a cloud upon his property, if he has a valid ground.
Plaintiff has not succeeded in sustaining his attack on defendant’s title, another issue of the cause.
The deed of sale under which defendant’s husband possessed, dated in the year 1857, is null. But such a sale says Burrows on Tax Title, p. 343, may serve as a starting point from which to date the prescription of 30 years. There may some use be made of such a deed, if for no other purpose than to show possession—pedis posito. Id.
In addition, in the year 1870, 30 years prior to the date of plaintiff’s suit, defendant bought the property from her husband, the ostensible owner. This is sufficient title upon which to base the prescription of 30 years by an owner in possession.
Returning to plaintiff’s tax title, conceded that the state cannot be sued, and that the judgment is a nullity, it remains that plaintiff has testified that she thought always that all her taxes had been paid, and that she never knew her property had even been sold for taxes.
Again, the state of Louisiana acquired the property for the unpaid taxes of 1880 and 1881, and also the taxes of the years 1882 and 18S3.
In the deed of sale by the auditor to plaintiff the following is contained:
u * n t-> —; j,— , j.i. _ -, .MAJA " r ,, bui 1,111 £Lcfcr ft!1- ~<ucüZ7j ti dcut^-a-iyii-ooEfe--e-4—e&goroisa- Act 80 of 1888 having been paid to the Tax Collector as evidenced by his certificate, dated June 17th 1902 of record in this oflice amounting to Five and 91/ioo Dollars.”
We are not concerned with the meaning of this, inserted in the deed, and refer to it only as showing that the attention of the tax collector was called to 'this property on which the tax collecting department had been regularly collecting taxes since 1883.
The officers of the tax department having for that length of time assessed the property in the name of defendant, and collected the taxes from her, and everything having concurred to lead her into the belief that her property was unincumbered with back taxes, we do not think that plaintiff, who thrust himself into the legal trouble, could acquire a right through officers who have recognized for about 20 years defendant as owner.
The state nev.er went into possession and never claimed the property. This court said that the state “does not occupy, in this respect, a position different from that which any other adjudicatee at a tax sale would occupy,” as relates to the necessity of going into possession. She (defendant) has paid taxes exigible to date this suit was instituted. See Handlin v. Lumber Co., 47 La. Ann. 407, 16 South. 955: Breaux v. Negrotto, 43 La. Ann. 431, 9 South. 502.
In Breaux v. Negrotto, 43 La. Ann. 431, 9 South. 502, this court said:
“Neither the state nor the defendant took possession of the property. It remained continually in possession of the plaintiff and Delhomme, from whom plaintiff purchased. The rents and revenues were enjoyed by them. No demand or any attempt was ever made by the state to obtain the possession of the property. On the contrary, it only remained in the possession of the plaintiff, but it was carried on the assessment rolls *561 in the name of the plaintiff, assessed to him, and the taxes collected from him.”
By reason of the law and the evidence being in favor of defendant and against plaintiff, August Seim, the judgment of the dis-j trict court is affirmed.
NIOHOLLS, C. J., and MONROE, J., concur in the decree.
BLANCHARD and PROVOSTY, JJ., dissent.